UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | | |
| SMITH MINING AND MATERIAL, LLC ) | CASE NO. 06-30260(1)(11) | |
| ) | | |
| Debtor(s) ) | | |
| ) | | |
| J. BRUCE MILLER, TRUSTEE ) | | |
| ) | | |
| Plaintiff(s) ) | AP NO. 08-3079 | |
| ) | | |
| v. ) | | |
| ) | | |
| A & M OIL COMPANY, INC. ) | | |
| ) | | |
| Defendant(s) ) | | |

**MEMORANDUM-OPINION**

This matter came before the Court for a trial on the Amended Complaint of Plaintiff J. Bruce Miller, Trustee ("Trustee") of Debtor Smith Mining and Material, LLC ("Debtor") against Defendant A & M Oil Company, Inc. to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§547 and 550. The Court considered the testimony of the witnesses, the evidence submitted at trial and the written submissions of the parties. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. A Judgment accompanies this Memorandum-Opinion.

**FINDINGS OF FACT**

Plaintiff Trustee is the appointed Chapter 11 Trustee for the Debtor, a company that engaged in the business of mining and selling crushed stone.

Defendant, A & M Oil Company, Inc. ("A & M") is in the business of selling fuel. A & M sold fuel to Debtor's predecessor company and was familiar with its business operations. Debtor needed A & M's fuel to operate its mining equipment and vehicles.

By June of 2005, the Debtor's long-term liabilities outweighed its assets and it was insolvent. Debtor filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code on February 9, 2006. Debtor operated its business as Debtor-in-Possession pursuant to 11 U.S.C. §1107(a) and §1108 until Trustee was appointed on April 4, 2006.

At the time Debtor filed its Petition, it listed $18,065,397.74 in assets, $14 million of which was ascribed to real estate owned by Debtor. The Petition listed $10,741,952.89 in liabilities. Later, it was discovered Debtor's real estate was only worth approximately $4,278,800, resulting in the Debtor's assets being worth far less than its scheduled noncontingent and undisputed secured and unsecured liabilities.

On the Petition date, Debtor was clearly insolvent. There was evidence produced at trial indicating the Debtor was insolvent beginning in June 2005. No credible evidence was tendered to rebut this evidence of insolvency at least from June 2005 forward. When the Debtor's assets were ultimately sold to the Roger's Group, approximately $2,000,000 of the $10,400,000 paid was remitted to Mr. Chandler, an owner of a substantial portion of Debtor's mineral leases. Debtor realized approximately $8,400,000 on the sale, which was paid to the lender bank holding the assets as collateral for loans.

Mark Stout, President of A & M testified that he personally monitored his clients' payments. He testified that if a customer did not make a payment within 30 days, he would get involved and make calls for payment. It was important to A & M's cash flow that it receive payment

approximately every 30 days from its customers. All of A & M's invoices were Net 30. Stout testified that as A & M received a check from a customer, the amount was applied to the customer's oldest outstanding invoice.

Elizabeth Wiksen, a bookkeeper for Debtor, testified that Hollis Smith, a vendor of Debtor, would review all outstanding invoices of Debtor and instruct her as to which invoices were to be paid first. Smith ensured that he would be paid before any of the vendors were paid. From February of 2005 to August of 2005, Debtor paid Smith $5,000 per week. From August 2005 forward, Smith was paid $10,000 per week.

Although the Debtor was insolvent by June of 2005, it continued in business until approximately December 2005. Debtor was unable to obtain financing for continued operations. As a result, Debtor's insurance was cancelled for nonpayment of the premium forcing it to shutdown its operations and to file bankruptcy.

During early 2005, Debtor's payment on A & M's invoices ran on average 67 days to pay. Once the Debtor began experiencing cash flow problems, its payments to A & M began to lag. A & M threatened to suspend fuel deliveries going forward unless Debtor paid current fuel deliveries immediately or some payment had to be made every 30 days. In other words, contrary to the prior business practices between A & M and the Debtor, the oldest outstanding invoice was not the first invoice paid by the Debtor. Beginning in mid-July 2005, Debtor's average days to pay A & M increased to 76 days. In the last few months of its operations with A & M, Debtor was paying two older invoices with a current invoice. This was due to A & M's threatened suspension of delivery of fuel to the Debtor.

During the 90 days prior to the Petition date (November 11, 2005 to February 8, 2006) (hereinafter referred to as the "Federal Preference Period"), Debtor paid $85,984.88 to A & M. During the Federal Preference Period, A & M transferred $72,800.08 in invoiced fuel to Debtor.

In the 91 to 190 days prior to the Petition date (August 13, 2005 to November 10, 2005) (hereinafter referred to as the "State Preference Period"), Debtor paid $60,891.79 to A & M. On February 6, 2006, Debtor issued a check in the amount of $10,565.83 to A & M which was not honored until February 14, 2006 (hereinafter referred to as the "Post-Petition Transfer"). There was no Court approval for this transfer, nor was there any legal basis under the Bankruptcy Code for the Post-Petition Transfer.

## **CONCLUSIONS OF LAW**

The Trustee seeks to recover all funds transferred in the Federal Preference Period, the State Preference Period and the Post-Petition Transfer pursuant to 11 U.S.C. §§547, 549 and 550. The Trustee had the burden of proof on each of its claims. In defense of the Trustee's claims, A & M relied on the "ordinary course of business" and "new value" defenses of 11 U.S.C. §547(c)(2)(A) and (c)(4). The Trustee met his burden of proof on his claims and the Defendant was successful on its new value defense. Each claim will be examined separately.

### A. **Federal Preference Claim.**

The first claim of the Amended Complaint is based on 11 U.S.C. §547(b). In order to succeed on his claim the Trustee had the burden to prove that an interest of the Debtor in property was transferred (1) to or for the benefit of the creditor; (2) for or on account of an antecedent debt owed by the Debtor before such transfer was made; (3) made while the Debtor was insolvent; (4) made - -

4

(A) on or within 90 days before the date of the filing of the Petition; or

(B) between 90 days and one year before the date of the filing of the Petition, if such creditor at the time was an insider; and

(5) that enabled such creditor to receive more than such creditor would receive if - -

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.  11 U.S.C. 547(b).

On insolvency, 11 U.S.C. §547(f) creates a presumption that the debtor has been insolvent on or during the 90 days immediately preceding the date of the filing of the bankruptcy petition.  In re Nationwide Tower Co., 2008 WL 2472935 (Bankr. W.D. Ky. 2008).  A & M did not provide evidence sufficient to overcome this presumption.  Trustee's testimony coupled with documentary evidence and the ultimate sale price fully substantiated Debtor's insolvency from June 2005 forward.

It is also clear that Debtor made the transfers within the 90 days prior to the Petition date to A & M, a creditor of the Debtor, for or on account of an antecedent debt.  Thus, the issues before the Court are whether the Trustee proved that the Federal Transfers enabled A & M to receive more than it would have if this case was brought under Chapter 7 of the Code, if the transfers had not been made and A & M received payment of the debt to the extent provided by the provisions of the Code.

The evidence established that A & M did receive through the Federal Preference Period more than it would have if the case had been brought under Chapter 7 of the United States Bankruptcy Code.  A & M was an unsecured creditor.  At the time the Petition was filed, over $9 million in secured claims and over $200,000 in priority unsecured claims existed.  Had this been a liquidation,

5

there would not have been sufficient assets to pay any unsecured creditors, including A & M. Thus, the Trustee proved each element necessary to avoid the transfers made in the Federal Preference Period.

### (i). "New Value" Defense.

A & M asserted two defenses to the Federal Preference Claims. The first defense is the "New Value" defense of 11 U.S.C. §547(c)(4). Under this defense, a trustee may not avoid a transfer (1) to or for the benefit of a creditor, to the extent the creditor gave new value or benefit to the debtor; (2) the transfer was not secured by an otherwise unavoidable security interest; and (3) on account of which new value of the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. 11 U.S.C. §547(c)(4). The parties stipulated that A & M did provide new value to the Debtor with its fuel deliveries. The parties disagree as to the extent of that new value. The Trustee contends that after applying the new value received, the Trustee is entitled to recover $17,178.48 of the Federal Transfers. A & M contends the new value figure results in a recovery to the Trustee of $13,184.80.

In calculating new value, the proper approach is to offset each advance of new value against all prior preferences. In re Transport Assoc., Inc., 171 B.R. 232, 239 (Bankr. W.D. Ky. 1994) The difference between the Trustee and A & M's numbers is that the Trustee did not include Invoice No. 88198 dated January 18, 2006, a shipment of fuel valued at $3,993.41 which was invoiced on February 9, 2006, the date the Petition was filed. The plain language of Section 547 closes the preference window at the Petition date, limiting the §547(c)(4) defense to new value supplied and payments made before the debtor crosses into bankruptcy. Post-petition goods or services provided to a debtor do not qualify as "new value" for purposes of Section 547(c)(4). In re Phoenix

Restaurant Group, Inc., 317 B.R. 491 (Bankr. N.D. Tenn. 2004). After reviewing each parties' analysis and the evidence submitted at trial, the Court determines that A & M's analysis is correct. A & M should receive a setoff for invoice No. 88198 as the fuel represented by this invoice was delivered before the Petition was filed. The Trustee testified that the Petition was not filed until after business hours on the evening of February 9, 2006. When the value of the fuel delivered between August 13, 2005 and February 9, 2006 is subtracted from the payments made by the Debtor, the amount is $13,184.80. Therefore, the Trustee is entitled to recover $13,184.80 for transfers made during the Federal Preference Period.

### (ii). "Ordinary Course of Business" Defense.

A & M's second defense is based on 11 U.S.C. §547(c)(2) which provides that the trustee may not avoid a transfer to the extent it was in payment of a debt incurred by a debtor in the ordinary course of business of the transferee and (1) made in the ordinary course of business or financial affairs of the debtor or (2) made according to ordinary business terms. The evidence established that the transfers at issue were made in the ordinary course of business of A & M and were necessary to Debtor's ordinary business practices. However, the evidence also established that the transfers made during the Federal Preference Period were not made in the ordinary course of business or according to ordinary business terms.

The long prior business history between Debtor and A & M is instructive on this issue. Prior to the Federal Preference Period, Debtor paid its invoices at an average of 67 days after receipt. During the Federal Preference Period, that figure increased to 76 days. In addition to this evidence, A & M pressured Debtor for payment during the Federal Preference Period. Although A & M's President testified that he never threatened or actually delayed shipments in order to force payment,

this was not credible. Debtor's bookkeeper who paid the outstanding company invoices, testified that the Debtor's regular business practice had been to pay outstanding invoices first. However, when Debtor began experiencing cash flow problems and lengthened the time period between payment of A & M's invoices, A & M threatened to suspend fuel deliveries to Debtor unless payment for current fuel deliveries was made immediately. Hollis Smith agreed to this arrangement with A & M. The invoices and checks support this finding. This was a change in what had been the prior business practices between the parties.

If a creditor engages in unusual collection practices and the debtor makes payment in response, the debtor's subjective intent in making the payment is relevant as to the ordinariness of the payment. In re Speco Corp., 218 B.R. 390, 401 (Bankr. S.D. Ohio 1998). See also, In re Thompson Boat Co., 199 B.R. 908 (Bankr. E.D. Mich. 1996) (where economic pressure by a credit manager by withholding shipments pending payment resulted in earlier payments, it was not considered ordinary course of business). A & M did not carry its burden of proof on its ordinary course of business defense.

### B. State Law Preference Claims.

Count 2 of the Trustee's Amended Complaint asserts a preference claim under 11 U.S.C. §544(b) which provides for recovery for transfers voidable under applicable state law. KRS §378.060 provides that transfers are voidable by a creditor holding an unsecured claim made "in contemplation of insolvency with the design to prefer one or more creditors to the exclusion, in whole or in part of others." Two things must be demonstrated under this statute: (1) the transfer was made in contemplation of insolvency and (2) the transfer was made with the design to prefer one or more creditors to the exclusion of others. In re Rexplore Drilling, Inc., 971 F.2d 1219, 1223 (6th Cir.

8

1992). The design to prefer is presumed where a debtor makes a payment while insolvent. This presumption applies even where the debtor has no actual knowledge of insolvency if a reasonable debtor would believe himself insolvent. Id.

In this case, the Trustee testified that a review of Debtor's records established that Debtor was insolvent by June of 2005. The transfers made to A & M during the State Preference Period were between August 13, 2005 and November 10, 2005 and totaled $60,891.79. The evidence establishes that Debtor preferred A & M over other creditors as it had to have A & M's fuel to keep its business operating. The Trustee met his burden of proof on Count 2 of the Amended Complaint. Trustee is therefore entitled to recover the funds transferred to A & M during the State Preference Period, $60,891.79.

### C. Post-Petition Transfer.

Trustee's third claim under the Amended Complaint was made pursuant to 11 U.S.C. §549(a). Under this statute, the trustee may avoid a transfer of debtor's property that occurs after commencement of the case that is not authorized under the Code or by the Court. The parties stipulated that Debtor transferred to A & M $10,565.83 via check number 1111268 issued on February 6, 2006, but not honored until February 14, 2006. Where a transaction is undertaken that is not in the ordinary course of business without notice or a hearing, the trustee may avoid it. In re Roth American, Inc., 975 F.2d 949, 952 n. 3 (3d 1992). See also, Yoon v. Minter-Higgins, 399 B.R. 34 (N.D. Ind. 2008).

There was no court authority or statutory authority for the Post-Petition Transfer. A & M's defense to this claim is that neither the Trustee nor Debtor-in-Possession stopped payment on the transaction after the Petition was filed. The Trustee in the case was not appointed until well after

9

A & M received the funds in issue.  Furthermore, the payment was not made for post-petition ordinary operating expenses and was nothing more than an avoidable transfer as provided under the Code by 11 U.S.C. §549.  In re Metropolitan Cosmetic and Reconstructive Surgical Clinic, PA, 115 B.R. 185 (Bankr. D. Minn. 1990); In re Oakwood Markets, Inc., 203 F.3d 406 (6th Cir. 2000).  There was no prior Court authority or statutory authority under the Bankruptcy Code authorizing the Post-Petition Transfer.  Trustee is entitled to recover the $10,565.83 issued to A & M.

### D. Disallowance of Claims.

In Count 4 of the Amended Complaint, Trustee seeks disallowance of A & M's claim until full payment of the recovery is made under 11 U.S.C. §502(d).  The statute provides, in pertinent part that the court shall disallow any claim of any entity from which property is recoverable under section . . . 547 or 549, unless such entity has paid the amount for which the entity is liable under Section 550.  11 U.S.C. §502(d).  Once this Judgment is entered, Trustee is entitled to the relief he seeks under 11 U.S.C. §502(d).  The purpose of the statute is to assure equality of distribution of assets.  In order to ensure A & M such treatment, upon payment of the preference amounts, A & M must supplement the record and amend its proof of claim.  A & M is entitled to sufficient time to pay the Judgment herein.  Its claim will not be disallowed unless it fails to satisfy the Judgment within 30 days.  Matter of Davis, 889 F.2d 658, 662 (5th Cir. 1989).  It must, however, supplement the record with proof of satisfaction of the Judgment or the claim will be disallowed.

## CONCLUSION

Pursuant to the above Findings of Fact and Conclusions of Law the Court will enter the attached Judgment in favor of the Trustee on its Amended Complaint against A & M Oil Company, Inc. to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§547, 549 and 550.  Under

Count 1 the Trustee is entitled to avoid and recover $85,984.88 in transfers to A & M Oil which occurred in the 90 day period preceding the Petition date pursuant to 11 U.S.C. §547(b) and §550. A & M, however, is entitled to its new value defense under 11 U.S.C. §547(c)(4) reducing Trustee's recovery under Count 1 to $13,184.80.  Under Count 2, the Trustee is entitled to avoid and recover $60,891.79 in transfers to A & M which occurred in the period between 91 and 180 days prior to the filing of the Petition pursuant to 11 U.S.C. §544(b), §550 and KRS 378.060.  Under Count 3 the Trustee is entitled to avoid and recover $10,565.83 from A & M pursuant to 11 U.S.C. §549 and §550.  Under Count 4, A & M must supplement its Proof of Claim and the record with evidence of satisfaction of this Judgment or its claim will be disallowed pursuant to 11 U.S.C. §502(d).

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SMITH MINING AND MATERIAL, LLC | ) | CASE NO. 06-30260(1)(11) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| J. BRUCE MILLER, TRUSTEE | ) | |
| | ) | |
| Plaintiff(s) | ) | AP NO. 08-3079 |
| | ) | |
| v. | ) | |
| | ) | |
| A & M OIL COMPANY, INC. | ) | |
| | ) | |
| Defendant(s) | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of Plaintiff J. Bruce Miller, Trustee of Debtor Smith Mining and Material, LLC on its Amended Complaint against Defendant A & M Oil Company, Inc. as follows: Count 1 - $13,184.80; Count 2 - $60,891.79, and Count 3 - $10,565.83, and Count 4 - A & M must supplement the record with evidence of satisfaction of the Judgment within 30 days or its claim will be disallowed.

This is a final and appealable Judgment. There is no just reason for delay.